**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DAVID MILLER,<br><br>Plaintiff,<br><br>v.<br><br>THE CENTURION MEDICAL,<br>N.P. CLARK,<br><br>Defendants. | Civil Action No.: SAG-25-2888 |

**MEMORANDUM OPINION**

Plaintiff David Miller, who is incarcerated at Western Correctional Institution in Cumberland, Maryland, filed this civil rights complaint alleging he has been denied appropriate medical care in violation of the Eighth Amendment to the Constitution. ECF No. 1. Defendants Centurion of Maryland, LLC ("Centurion") and Janette Clark, N.P. filed a Motion to Dismiss or, in the alternative, for Summary Judgment. ECF No. 12. Miller opposes the motion. ECF No. 14. No hearing is required. D. Md. Local R. 105.6 (2025). For the reasons below, the Motion will be DENIED without prejudice and counsel will be directed to file a status report regarding Miller's current medical care.

**BACKGROUND**

Miller asserts that he has had hemorrhoids that have worsened over the 8 to 10 months before he filed his Complaint. ECF No. 1 at 3. He states they started out as internal hemorrhoids but have grown larger and become external, causing extreme pain. *Id.* Miller claims he had to submit several sick call slips to obtain medical attention, at which time he was prescribed Preparation H. *Id.* Specifically, he submitted two sick call slips in November of 2024 and four in

December. *Id*. at 4. In January of 2025, Miller submitted six sick call slips asking to be seen; in February he submitted three more and was told that he had not been approved to see an outside provider; he was given "more medication." *Id*. Between March and May of 2025 he submitted eight sick call slips asking for his medical records and complaining about a sharp, shooting pain down his leg. *Id*. At this time, the hemorrhoids had prolapsed and were external to Miller's anus. *Id*. Miller expresses fear that if the hemorrhoids rupture he could bleed to death. *Id*.

On June 6, 2025, Miller states that a stool sample was taken and it was verified that he had blood in his stool. ECF No. 1 at 4. Miller recalls that another request was made for him to be seen by an outside provider. *Id*. After he submitted another sick call on June 16, 2025, Miller received an x-ray on June 18, 2025. *Id*. He put in two more sick call requests on June 23 and 26 asking for more cream. *Id*.

In July, 2025, Miller continued to seek medical treatment through the use of sick call slips and was prescribed "steroids" and Preparation H. ECF No. 1 at 4-5. He adds that on July 30, 2025, he was in so much pain that he had someone tell Officer Lillard, who called the medical unit on Miller's behalf. *Id*. at 5. Miller was taken to the medical unit via wheelchair because he could not walk. *Id*. He states that N.P. Clark examined him and attempted to push the hemorrhoidal mass back inside. The attempt failed because she was not strong enough and Miller could not take the pain it was causing. *Id*. She sent him back to his housing unit with more Preparation H, after telling him she would again ask for him to be sent to an outside provider. *Id*.

On August 8, 2025, Miller woke up in so much pain he had someone tell the correctional officer working on the tier what was going on. ECF No. 1 at 5. After Miller's door was opened and he walked to the front of the tier, Officer Knight called the Medical Unit and he was informed by the staff there that "there is absolutely nothing" they could do for Miller and they "were doing

all they could" for him. *Id*. Miller states that he is living in extreme pain that affects his daily living because he cannot sit or lay down without discomfort. ECF No. 1 at 3. According to Miller, Dr. Demear has told him he needs surgery for his condition but every time he asks for the surgery to be approved, "they shoot it down." *Id*.

As relief, Miller seeks an order from this Court requiring proper medical care for his condition, and compensatory and punitive damages. ECF No. 1 at 8.

Defendants assert that Miller underwent an internal hemorrhoidectomy on or about June 30, 2017. ECF No. 12-3 at 293. Since that surgery, it was reported on May 16, 2024, that he had complaints of "intermittent abdominal pain/cramping left side with liquid stools." *Id*. Prior to this appointment, on April 24, 2024, Miller refused a sick call appointment and signed a Release of Responsibility ("ROR") indicating as much. *Id*. at 2-3.

On May 16, 2024, Defendant Clark ordered an x-ray, lab work and a stool sample to determine why Miller was having issues using the bathroom. ECF No. 12-3 at 4-5. Miller received the x-ray on May 23, 2024; the results showed no bowel obstruction and no "significant colonic stool burden." *Id*. at 6. The clinical report regarding Miller's stool sample, taken on May 24, 2024, indicated normal results. *Id*. at 7.

On June 16, 2024, Miller sent in a sick call slip complaining of stomach pains and problems having a bowel movement. ECF No. 12-3 at 12. On July 3, 2024, Clark noted that Miller could not be seen for this sick call slip because the housing unit was locked down. *Id*. She also noted that Miller should be rescheduled for a sick call visit. *Id*. That same day, Clark saw Miller for a follow-up visit. *Id*. at 290-92. She ordered fiber tablets for Miller because he requested them and she ordered a follow-up visit with Dr. Masoud Djahanmir at Miller's request. *Id*.

On July 18, 2024, Miller was assessed by Dr. Djahanmir for a five-month history of complaints of abdominal pain associated with a change in stool consistency, constipation, bloating and mucus in the stool. ECF No. 12-3 at 287. The record indicates that Miller told the doctor that "all of his problems started after surgery for hemorrhoids." *Id*. There does not appear to be a diagnosis or treatment plan resulting from this visit. *Id*.

On November 6, 2024, Miller submitted a sick call slip stating that his pain had reached a new level and he believed something was wrong with his colon. ECF No. 12-3 at 20. He also said he was bleeding "back there" and that this "has something to do with [the] hemorrhoid surgery." *Id*. "Refer to a provider" was written on the sick call slip. *Id*. Miller was seen two days later by Stacy A. Gallant, RN for a sick call visit. *Id*. at 277-79. Miller is reported to have said that he was having a "really hard time going to the bathroom" and that he thought it was related to his hemorrhoid surgery he had "a few years ago." *Id*. at 277. He told Gallant he needed fiber and to be seen by an outside doctor. *Id*. Gallant contacted Burnice Mace, NP for "treatment authorization and renewal of Fiber-tabs." *Id*. at 279.

Miller was seen on December 11, 2024, for the sick call slip he wrote on November 6, 2024. ECF No. 12-3 at 274-76. Miller was again seen by Gallant, who referred him to a provider for an anal exam for his reported symptoms. *Id*. at 276.

Although Gallant notified the "onsite scheduler via email" that Miller needed a provider appointment (*id*.), by December 29, 2024, Miller had not been seen for the problem and submitted another sick call slip stating, "it is blocked off back there from hemorrhoids." ECF No. 12-3 at 21. Miller kept submitting sick call slips through the first week of January, 2025, describing "unbearable pain," (*id*. at 23), stating he could not do anything because of pain (*id.* at 25), and that nothing that has been given to him helps (*id*. at 26).

On January 8, 2025, Miller was once again seen by Gallant for his complaint that he could not have a bowel movement unless it was not solid. ECF No. 12-3 at 271. Gallant noted that she had seen Miller for the same problem twice before and she had referred him to a provider on both occasions, but he was not scheduled either time. *Id*. at 273. She wrote that she notified the onsite scheduler "face-to-face" that Miller needed "to be scheduled immediately to see provider." *Id*. Miller was scheduled to be seen by a provider the following day. *Id*.

On January 9, 2025, Miller was seen by Dr. Djahanmir. ECF No. 12-3 at 265-69. Miller told the doctor that his hemorrhoids "have been acting up" and that the pain was so severe it was waking him up from sleep and that he has difficulty sitting. *Id*. at 265. Additionally, Miller informed Dr. Djahanmir that he was unable to defecate comfortably. *Id*. Dr. Djahanmir gave Miller stool cards to complete for lab work and prescribed Anusol suppositories. *Id*. at 267, 269.

On February 20, 2025, Dr. Djahanmir saw Miller for his complaint that he was unable to pass stool because of "massive hemorrhoids." ECF No. 12-3 at 253. Miller explained that "he needs to use his finger to push away the hemorrhoids tissue in order to pass stool." *Id*. Dr. Djahanmir confirmed that Miller had "massive hemorrhoidal tissue and severe pain," ordered the continuation of hemorrhoidal cream and Anusol suppositories, and submitted a request for a general surgical consultation. *Id*. at 255.

On February 20, 2025, the consultation request was denied with an alternative treatment plan ("ATP") written by Utilization Management provider Dr. Solaide Akintade and Edna A. Asamany, UM RN. ECF No. 12-3 at 252. The ATP states as follows:

> Unclear rectal exam documented. Medical appropriateness for General Surgery consultation after hemorrhoidectomy surgery (2017) as unclear if maximal conservative management has been trialed. Recommend increased water and fiber intake and compliance with prescribed treatment. Medical provider to reevaluate for clinical improvement after conservative management and if

> symptoms are not improve [sic] please resubmit with additional pertinent information as indicated. Thank you.

*Id*.

On February 28, 2025, when Miller was seen for his hypertension, he mentioned that he was still struggling with constipation. ECF No. 12-3 at 241. Miller was told to continue taking fiber tablets. *Id*. at 243. There is no indication that he was informed about the surgical consultation being denied.

On March 27, 2025, Miller submitted a sick call slip seeking a refill for Preparation H and complaining that no provider had actually examined his hemorrhoids after almost a year of complaining about it. ECF No. 12-3 at 37. He theorized that if medical staff did not look at the problem, they would not have to do anything. *Id*.

On June 9, 2025, Miller was seen for complaints of blood in his stool. ECF No. 12-3 at 215. Dr. Djahanmir noted that Miller's stool cards for occult blood were positive and he had recently begun to complain of chronic back pain. *Id*. He requested a consultation with a gastroenterologist via telemedicine, which was approved that day. *Id*. at 218.

On July 24, 2025, Miller was seen for his complaint that "something is hanging out my butt." ECF No. 12-3 at 186. When Clark performed a rectal exam, she discovered that Miller had one large external hemorrhoid without bleeding. *Id*. at 188. Clark noted that Miller told her he was not able to use the suppositories anymore because of the heat; she advised him to use ice or cold compresses to keep the suppositories solid and insert them at bedtime. *Id*. Clark also prescribed zinc oxide ointment for the pain. *Id*.

On August 4, 2025, Dr. Djahanmir submitted another surgical consultation request for Miller to be seen for his hemorrhoids. ECF No. 12-3 at 175. This request was approved on August 11, 2025. *Id*. at 179.

On August 5, 2025, Miller was seen via telehealth by Dr. Anwar Khokhar for rectal bleeding and blood in his stools. ECF No. 12-3 at 57-58. Documentation of the appointment indicates that Miller told Dr. Khokhar he wants something done for his hemorrhoids and Dr. Khokhar "discussed in detail" that hemorrhoids can "always come back." *Id*. at 57. Miller apparently disagreed with Dr. Khokhar and insisted that having a hemorrhoidectomy 7 years earlier should have fixed the problem. *Id*. A handwritten note on the record indicates that on August 22, 2025, a request for a colonoscopy and a surgical consult were either submitted or suggested. *Id*.

On August 12, 2025, Miller submitted a sick call stating that he had multiple hemorrhoids, was in a lot of pain, and needed to be sent to the emergency room or to see a specialist. ECF No. 12-3 at 68. He also suggested it was "racially motivated" to allow him to continue to suffer in pain. *Id*. An August 22, 2025, notation on the sick call slip indicates that "Tucks pad" were reordered for Miller in response to this complaint. *Id*. Miller was supposed to be seen on August 12, 2025, for a chronic care visit, but refused the visit. ECF No. 12-3 at 165.

In a sick call slip received on August 6, 2025, Miller complained he was fighting two hemorrhoids, which meant that his Preparation H was gone more quickly, and he needed a refill. ECF No. 12-3 at 69.

On August 22, 2025, Burnice Mace, NP, saw Miller for an appointment in response to a sick call he submitted asking for treatment for his hemorrhoids. ECF No. 12-3 at 160-64. Mace noted that Miller had recently seen Dr. Khokhar on August 5, 2025, and she shared the results of the consultation with him. *Id*. at 160. Mace also noted that Miller was approved for a surgical consultation per Dr. Khokhar's request. *Id*. Miller was assessed with fourth-degree hemorrhoids, his medications were renewed, and Mace planned to request that the surgical consultation move forward as Miller reported that he could not sit down and suffered with pain daily. *Id*. at 162.

On August 24, 2025, Miller submitted a sick call slip complaining about the hemorrhoid pain and asked for refills of his Tylenol prescriptions. ECF No. 12-3 at 63. A notation dated September 19, 2025, indicates that Miller had no active prescriptions. On August 25, 2025, Miller submitted another sick call slip stating that the problem with his colon was preventing him from going to the bathroom, he was still in "major pain," and the issue had been ongoing for a year and a half. *Id*. at 64. On August 29, 2025, Miller submitted another sick call slip requesting refills of his prescriptions because he was not receiving them on time. *Id*. at 62. A stamp on the sick call slip next to the labels for the prescriptions states the bar codes were scanned. *Id*.

On a sick call slip marked as received on August 24, 2025, Miller informed medical staff that he had run out of suppositories and needed more. *Id*. at 65. On another sick call slip, Miller requested that Dr. Djahanmir ensure that his prescriptions were refilled every month in a timely manner because he was having a problem every month. *Id*. at 66. This sick call slip was received on August 22, 2025. *Id.* On September 17, 2025, Dr. Djahanmir made an administrative note in Miller's record stating "Medication renewal." *Id*. at 159.

On September 18, 2025, Dr. Djahanmir saw Miller in response to his complaint that he was unable to use the bathroom due to inflamed and engorged hemorrhoids. ECF No. 12-3 at 153-56. Dr. Djahanmir noted that Miller's surgical consultation had been approved and he is scheduled for the visit with the surgeon. *Id*. at 155.

On October 8, 2025, Miller was seen by Linda Everett, NP, for a chronic care visit related to his fourth-degree hemorrhoids. *Id*. at 137-41. In a notation regarding Miller's GI system, the record states: "Hemorrhoids (This has been occurring for more than 1 year. Status: exacerbating. The severity is described as severe. Associated symptoms include pain and bleeding. It is relieved

by nothing. Precipitating factors include constipation and sitting)." *Id*. at 139. Miller was scheduled for a follow-up visit with Everett for another chronic care visit in three months. *Id*. at 140.

**STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v.*

*Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Although Miller was on notice that the Court could treat the motion as one for summary judgment and rule on that basis, this Court does not find it appropriate to convert this motion and will adjudicate it as a motion to dismiss.

## ANALYSIS

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th

Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543. Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko v. Shreve*, 535 F.3d 225, 241(4th Cir. 2008)); *see also Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). Under this standard, Defendants "must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual

knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Taking the allegations in Miller's complaint as true, he is suffering from a very painful condition which Defendants have acknowledged has existed for more than a year and requires evaluation by a surgeon. According to Miller's allegations, though, he has been deprived of that evaluation, in part because of decisions made by Centurion staff. *See* ECF 12-3 at 252. Accordingly, Defendants' Motion will be denied without prejudice. They are directed to file a status report stating whether Miller has received a consultation with a surgeon and the results of that consultation. If the consultation did not take place, or no action has been taken as a result of the consultation, Defendants are directed to show cause why this Court should not grant Miller's request for injunctive relief to require additional care at their expense. Miller will be granted an opportunity to respond to the status report filed by Defendants.

A separate Order setting out the timeline for further briefing follows.

August 28, 2026
Date

/s/
Stephanie A. Gallagher
United States District Judge